Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>$13,196.00 U.S. CURRENCY,<br><br>　　　　　　　　Defendant. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Brian M. Donovan, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

I. NATURE OF THE ACTION

1.　This is an action to forfeit and condemn to the use and benefit of the United States of America the above-captioned Defendant property seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives for violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*　　　　　　　　　-1

## II. THE DEFENDANT(S) *IN REM*

2. The Defendant property consists of the following property:

$13,196.00 U.S. currency, seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives on or about June 15, 2017, pursuant to the execution of a Federal Search and Seizure Warrant.

## III. JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court has *in rem* jurisdiction over the Defendant property under 28 U.S.C. § 1355(b).

4. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## IV. BASIS FOR FORFEITURE

6. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 5 above.

7. The Defendant property is liable to condemnation and forfeiture to the United States for its use, in accordance with the provisions of 21 U.S.C. § 881(a)(6),

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                            -2

because it constitutes: 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## V. FACTS

1. On June 26, 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received information from a confidential informant ("CI") regarding Salvador Ruiz-Cortez ("Ruiz-Cortez"). The CI provided information that Ruiz-Cortez was selling methamphetamine and in possession of firearms and items described as grenades. The CI had also witnessed Ruiz-Cortez purchasing stolen firearms.

2. Beginning in July 2016, and continuing to April 2017, ATF conducted numerous controlled purchases of methamphetamine from Ruiz-Cortez utilizing ATF CIs. ATF purchased approximately 319.24 gross grams of methamphetamine and paid a total of $4,300.00 in buy funds within approximately eight different transactions.

3. During a buy on July 21, 2016, Ruiz-Cortez explained to the CI how to avoid police detection by obtaining a part time job. In Spanish, later translated and transcribed in English, Ruiz-Cortez told the CI, "If someone say, hey, Chela sells that . . . and they tell the police. And the police start watching you. The police see that you're going to work, fuck, how can Chela sell if she's working?" During the same

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                                -3

buy, Ruiz-Cortez bragged to the CI about how much money he was making selling narcotics: "From those twenty-five hundred dollars, eight hundred is for me, the rest is for the merchandise."

4. Based on the information discovered during their investigation, on June 15, 2017, ATF agents searched Ruiz-Cortez's residence. Agents located and seized firearms and ammunition in their search. They also located several bundles of U.S. currency in two suit jackets hanging in Ruiz-Cortez's closet. Agents seized $3,600.00 in the pocket of a men's gray suit jacket and $2,300.00 in the pocket of a men's black suit jacket. Agents also located $5,000.00 in a bedroom belonging to Ruiz-Cortez's daughter, Thalia Ruiz ("Ruiz"), and her partner, Carlos Hernandez ("Hernandez"). An additional $2,296.00 was found on Ruiz-Cortez's person. The total amount of U.S. currency seized was $13,196.00.

5. Ruiz-Cortez was indicted on June 20, 2017, on one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and eight counts of distribution of methamphetamine, in violation of 21 U.S.C. § 846(a)(1), corresponding to the eight controlled buys. On September 11, 2018, he pled guilty to one count of distribution of methamphetamine.

6. On October 4, 2017, Ruiz and Beatriz Martinez ("Martinez"), Ruiz-Cortez's daughter and wife, respectively, each filed claims to the currency seized from the residence they share with Ruiz-Cortez and Hernandez. In her claim, Ruiz asserted that the $5,000.00 seized from her bedroom was income from working for her mother,

VERIFIED COMPLAINT FOR FORFEITURE IN REM    -4

for which she did not have paychecks or paystubs to verify. Martinez stated in her claim that the $5,900.00 found in the closet she shared with Ruiz-Cortez was money she withdrew from her bank account and money she had received from selling a car. Martinez also claimed the $2,296.00 seized from Ruiz-Cortez's person during his arrest.

7. ATF investigated Ruiz's claim of income from her mother's business and found no evidence to support it. On July 3, 2017, after ATF executed their search of Ruiz-Cortez's home and seized the currency, Martinez obtained a business license to operate a taco truck under the name "Las Amigas." ATF had searched the truck on June 15, 2017, and it was evident then that the truck had not been used in a significant amount of time. When ATF obtained records for Las Amigas from the Washington State Department of Revenue, it showed the business had gross retail sales of $17,840.00 for the period from July 3, 2017, when Martinez registered the truck, to September 30, 2017, the end of the fiscal quarter.

8. Correspondingly, Ruiz did not have any reported income until after the seizure of the currency. Washington State Employment Security Department records show no income for Ruiz from 2012 through June 30, 2017. From July 2017 to September 2017, however, after the execution of the search warrant and the seizure of the currency, Washington State records show that Ruiz earned $5,280.00 working for Las Amigas.

VERIFIED COMPLAINT FOR FORFEITURE IN REM                                        -5

9.  Martinez also had low reported earnings. Washington State Employment Security Department records show that Martinez earned $7,501.45 in 2015 and $3,953.05 in 2016 but show no reported income for January 1 through June 30 of 2017.

10. Hernandez was the only member of the household with reported wages for the first half of 2017, before the execution of the search warrant and seizure of the currency on June 15, 2017. Washington State Employment Security Department records show a gross income of $12,350.05 from January 1 to June 30, 2017. This amount reflects Hernandez's income before the deduction of employment taxes such as federal income tax, Social Security tax, and Medicaid/Medicare taxes; the amount he was actually paid would be less than the gross income reported.

11. Martinez also indicated that a portion of the seized currency was proceeds from the sale of a car. Again, ATF could find no support for this claim. When Ruiz-Cortez was arrested on June 15, 2017, he stated that he had recently sold three cars: a GMC Sierra, sold for $1,500.00; a Chevrolet Tahoe, sold for $1,800.00; and an Audi A4 for $2,300.00. ATF later performed a title search, however, which showed that the GMC Sierra was sold for $800.00 in August of 2015; the Chevrolet Tahoe for $500.00 in April of 2018; and the Audi A4 did not appear to have been sold at all and was still in Martinez's name.

12. During the search of Ruiz-Cortez's residence, ATF recovered various financial documents that indicate the seized currency was the proceeds of Ruiz-

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                                            -6

Cortez's illegal drug trafficking. These documents included Ruiz-Cortez's tax returns for the previous two calendar years, 2015 and 2016. The returns indicated that Ruiz-Cortez operated a wood-cutting business. In 2015 Ruiz-Cortez's reported income after deducting business expenses was $1,707.00. In 2016, his income after deducting business expenses was $1,511.00. Averaging the earnings for the past two years, it can be assumed that Ruiz-Cortez's business brought in approximately $800 in income during the first six months of 2017.

13.    ATF also found evidence of many expenses for the household. Ruiz-Cortez's bank statements show payments to Yakima Waste system of $33.50 every other month ($201.00 annually) and to DirecTV of $93.73 a month ($1,124.76 annually).

14.    Martinez's separate bank account was used for additional recurring expenses. Her bank statements show automatic payments to Mutual of Enumclaw Insurance of $80.50 a month ($966.00 annually); U.S. Cellular payments of $65.87 a month ($790.44 annually); and Progressive Insurance (suspected to be car insurance) payments of $968.00 semi-annually ($1936.00 annually). Martinez's bank statements also show a payment of $501.85 to Pacific Power in February 2017, leading to a conservative estimate of $200.00 a month in energy bills for the household ($2,400.00 annually).

15.    During his interview on June 15, 2017, Ruiz-Cortez stated that the mortgage payments were $1,150.00. This amounts to yearly mortgage expenses of

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                                  -7

$13,800. Ruiz-Cortez also indicated during that interview that he had a truck payment of $375.00, totaling $4,500.00 a year.

16.    These recurring expenses total $25,718.20 for the year. This does not include necessities like food, clothing, and gas for the household, which also includes Ruiz's daughter and an elderly parent. Nor does it include optional spending on things such as entertainment.

17.    The reported household income does not appear reasonable to support a household of six, especially in light of the known expenses. The household's only reported income was from Hernandez, who earned $12,350.05 in the first six months of 2017. Again, this is his gross income before taxes; the amount he brought home to pay bills is less. If Ruiz-Cortez brought in approximately $800.00 from his business, the household had at most approximately $13,150.00 of reported income in the first half of 2017. The known expenses amount to approximately $12,859.00 for same period. This leaves at most the implausible amount of approximately $50.00 a month for food, clothing, medicine, gas, entertainment, and any other expenses that may arise for the six-person household.

18.    Further, if the household was subsisting on such a small income, it is inconceivable that they would have such a substantial amount of cash in their home. ATF seized $13,196.00 in U.S. currency, more than the household's income so far that year. The household had many known expenses and surely would have additional expenses that were not identified in the documents recovered during the search.

VERIFIED COMPLAINT FOR FORFEITURE IN REM                                           -8

Therefore, it is reasonable to believe that Ruiz-Cortez's income from trafficking illegal drugs was used to support the household and the seized currency is proceeds from the illegal trafficking.

19. This is bolstered by the fact that Ruiz-Cortez told the CI that a good technique to evade detection by authorities was to have a part time job; Ruiz-Cortez did just that. Further, shortly after Ruiz-Cortez's arrest, Martinez opened her food truck business that employed Ruiz, indicating that the family needed supplementary income. Ruiz-Cortez only reported an average income of $1,600.00 a year; the loss of that income alone would not be likely to cause both women to seek work.

20. Again, the reasonable explanation is that Ruiz-Cortez was in fact bringing in much more than his reported income by trafficking illegal drugs, and the currency found in the house was proceeds from that illegal activity. Through their controlled purchases with the CI, ATF paid Ruiz-Cortez $4,300.00. Ruiz-Cortez undoubtedly received money from other illegal sales as part of his drug trafficking operation. Martinez and Ruiz have produced no evidence in support of their claims to the currency, and what evidence there is contradicts their allegations.

## VI. CONCLUSION

WHEREFORE, Plaintiff requests that the Clerk of the Court issue a warrant for the arrest of the Defendant property; that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property; that the Defendant property be forfeited and condemned to the United States of America; that

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                    -9

1  Plaintiff be awarded its costs and disbursements in this action and for such other and
2  further relief as this Court deems proper and just.
3      DATED this 31st day of May 2022.

Vanessa R. Waldref
United States Attorney

Brian M. Donovan
Assistant United States Attorney

## VERIFICATION

I, Bryan A. Bach, hereby verify and declare under penalty of perjury that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, in Yakima, Washington that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States and information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

//

//

//

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                             -10

I hereby verify and declare under penalty of perjury that the foregoing information is true and correct.

DATED this __26th__ day of May 2022.

*Bryan Bach*
Digitally signed by BRYAN BACH
Date: 2022.05.26 14:57:55 -07'00'

Bryan A. Bach, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*                                            -11